**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

UNITED STATES OF AMERICA,

      Plaintiff,                                   Case No. 3:12-po-070

    -vs-                                         Magistrate Judge Michael R. Merz
                                            :

GERHARD SCHUMACHER.,

      Defendant.

## DECISION AND ORDER

This case is before the Court on Defendant's Motion to Dismiss (Doc. No. 10). The United States opposes the Motion (Doc. No. 11) and Defendant's time to file a reply memorandum in support has expired.

The Information in this case charges in Count I an offense of aggravated menacing:

> Starting on or about January 13, 2012 and continuing until on or about January 24, 2012, at Wright-Patterson Air Force Base, Ohio, in the Southern District of Ohio, within the special maritime and territorial jurisdiction of the United States, on land acquired for the use of the United States and under the exclusive jurisdiction thereof, the Defendant, GERHARD SCHUMACHER, did knowingly cause another to believe that he would cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.
>
> In violation of 18 U.S.C. § § 7& 13 and O.R.C. § 2903.21(A).

(Information[1], Doc. No. 2, PageID 2.) Count II in the same language charges an offense of

---

[1] The Motion refers to "the Complaint" in this case. There has never been a complaint filed in this case; the charging instrument here is an information.

1

menacing under Ohio Revised Code § 2903.22(A). *Id.* The parties have stipulated to the following facts:

> 1. The alleged victim in this case is an active duty member of the United States Air Force and he is currently stationed at Wright-Patterson Air Force Base in Dayton, Ohio;
> 2. The Defendant, Gerhard Schumacher, previously served on active duty in the United States Air Force;
> 3. The facts giving rise to the allegations of menacing against Defendant, Gerhard Schumacher, occurred in January of 2012;
> 4. The statements alleged to have been made Defendant, Gerhard Schumacher, which give rise to the allegations of menacing were uttered to individuals who are neither the purported victim nor a member of the immediate family of the purported victim.
> 5. The purported victim has not communicated with Defendant, Gerhard Schumacher, since January of 2011.

(Stipulation of Facts, Doc. No. 9, PageID 16-17.)

Based on the stipulated facts, Defendant argues he cannot be convicted of either menacing or aggravated menacing because he made no threatening comments during the charged time period either to the asserted victim or to any of his or close relatives. He relies on *State v. Chmiel*, No. 96-L-173, 1997 Ohio App. LEXIS 4364 (Ohio App. 11th Dist. Sept. 26, 1997); *State v. Richard*, 129 Ohio App. 3d 556 (Ohio App. 7th Dist. Aug. 26, 1998); and *State v. Hileman*, 2005-Ohio-1698, 2005 Ohio App. LEXIS 1632 (Ohio App. 5th Dist. Apr. 8, 2005).

In *Chmiel*, defendant was acquitted of menacing charges because there was no proof she had knowingly caused any of her threatening thoughts to be communicated to the potential victim or her family. In *Richard*, the threat to cause serious physical harm to defendant's ex-wife was made to a Child Support Enforcement Agency employee. In *Hileman*, the threat to kill was again made to a CSEA-connected person, this time about an ex-wife's father.

*Hileman* has been overruled on the relevant point in *State v. McWilliams*, 2012-Ohio-663, 2012 Ohio App. LEXIS 581 (Ohio App. 5th Dist. Feb. 13, 2012), where the court held the

2

menacing statues could be satisfied by proof the threat was made to a third-party if the defendant knew or reasonably should have known that person would convey the threat to the intended victim. In *McWilliams* the court recognized the split of authority among Ohio appellate courts on this point. *Id.* at ¶ 13.

Defendant is charged under 18 U.S.C. § 13, the Assimilative Crimes Act, whose

> . . . basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves. See *Williams v. United States*, 327 U.S. 711, 718-719, 66 S.Ct. 778, 781-782, 90 L.Ed. 962 (1946) (ACA exists "to fill in gaps" in federal law where Congress has not "define[d] the missing offenses"); *United States v. Sharpnack,* 355 U.S. 286, 289, 78 S.Ct. 291, 293, 2 L.Ed.2d 282 (1958) (ACA represents congressional decision of "adopting for otherwise undefined offenses the policy of general conformity to local law"); *United States v. Press Publishing Co.*, 219 U.S. 1, 9-10, 31 S.Ct. 212, 213-214, 55 L.Ed. 65 (1911) (state laws apply to crimes "which were not previously provided for by a law of the United States"); *Franklin v. United States*, 216 U.S. 559, 568, 30 S.Ct. 434, 436-437, 54 L.Ed. 615 (1910) (assimilation occurs where state laws "not displaced by specific laws enacted by Congress").

*Lewis v. United States*, 523 U.S. 155, 160 (1998).

We are not bound by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), when interpreting assimilated state statutes because the state statute becomes part of federal law by virtue of the assimilation. See Wayne A. Logan, *Erie* and the Federal Criminal Courts, 63 Vanderbilt L. Rev. 1243 (2010). Nonetheless, the logic of *McWilliams* and other Ohio appellate cases that reach the same conclusion is compelling. In interpreting a statute a court should:

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
>
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear,

> or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169. The evident purpose of the Ohio menacing statutes is to protect persons from being put in fear of physical harm by threats. That harm may as readily be inflicted by an indirect threat as by a direct threat. Suppose the case of a person who wrote a note to another saying, "I am carrying a gun and the next time I see you, I will shoot you with it." The threatener then puts the note into an envelope addressed to the victim at his home address and deposits it with the Postal Service. While the threatener has not spoken directly to the victim, he has placed an explicit threat of serious physical harm in the care of a third-party who is duty-bound to deliver the threat. Defendant offers no sound basis for interpreting the relevant statutes as excluding this conduct. In particular, the Court concludes these are not merely public order statutes designed to keep people from starting fights by making threats. Rather, they are intended to prevent psychic harm to people by shielding them from threats knowingly communicated by whatever means.

The Court accordingly concludes the Stipulated facts do not require dismissal of the Information and Defendant's Motion to Dismiss is DENIED. The Clerk shall set this case for trial.

November 19, 2012.

s/ *Michael R. Merz*<br>United States Magistrate Judge